UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/23/21
```

United States of America,

–v–

William Tucker,

                    Defendant.

13-cr-378 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

    William Tucker moves for compassionate release pursuant to 18 U.S.C. § 3582(c).  He

contends that the extraordinary circumstances of the pandemic support his release because he has

medical conditions that place him at heightened risk for serious illness or death from COVID-19.

The Government counters that because he has already recovered from COVID-19 and since been

vaccinated against the virus, he faces a low risk of infection.  After considering the sentencing

factors set forth in 18 U.S.C. § 3553(a), the Court finds that the sentence it originally imposed is

now greater than necessary to achieve the purposes of punishment and that extraordinary and

compelling circumstances warrant a reduction in Mr. Tucker's sentence, but not his immediate

release.  The Court reduces his sentence of imprisonment by one year.

## I.    Background

    The Government charged Mr. Tucker and four codefendants for their role in a conspiracy

to distribute heroin and cocaine and a conspiracy to commit Hobbs Act robbery.  Indictment at

1–3, Dkt. No. 13.  In short, "Mr. Tucker planned with others to rob drug dealers."  Sentencing

Tr. at 31–32, Dkt. No. 111.  Mr. Tucker did not orchestrate the robbery but instead occupied the

role of one of three gunmen.  PSR ¶¶ 30–32.  He and his codefendants were arrested on April 22,

2013, while on the way to the planned robbery.  *Id.* at 23.  Mr. Tucker ultimately pleaded guilty to the charges in accordance with a plea agreement, as did his codefendants.  *Id.* ¶ 7.  In sentencing Mr. Tucker, this Court emphasized the seriousness of the offense and of his violent criminal history.  Sentencing Tr. at 31–33.  The Court noted, too, that Mr. Tucker had a "slightly diminished level of overall culpability" relative to his codefendants and that he was genuinely "remorseful" and accepted responsibility for his crimes.  *Id.* at 32–34.  This Court imposed a below-guidelines sentence of 176 months' imprisonment.  *Id.* at 34.

Mr. Tucker is incarcerated at FCI Allenwood Medium with a projected release date in October 2025.  He made two administrative requests for compassionate release to the warden of FCI Allenwood and received two denials.  Tucker Br., Ex. A, Dkt. No. 215.  With the assistance of counsel, Mr. Tucker filed the present motion for compassionate release, which the Government opposes.  Dkt. Nos. 214, 219.

## II.   Discussion

Subsection 3582(c) of title 18 provides a limited exception to the rule that "[f]ederal courts are forbidden,  as a general matter, to 'modify a term of imprisonment once it has been imposed.'"  *Freeman v. United States*, 564 U.S. 522, 526 (2011) (quoting 18 U.S.C. § 3582(c)).  It allows a court to "reduce" a term of imprisonment, after considering the factors set forth in 18 U.S.C. § 3553(a), if "it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).  Though often referred to as "compassionate release," the statute permits any reduction in sentence up to and including a reduction to time served.  *United States v. Diego Rodriguez*, 492 F. Supp. 3d 306, 309 (S.D.N.Y.

2020).  "A district court could, for instance, reduce but not eliminate a defendant's prison sentence, or end the term of imprisonment but impose a significant term of probation or supervised release in its place."  *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020).

The First Step Act of 2018, 132 Stat. 5194, 5239, amended this section to allow defendants to seek a sentence reduction in court after they have exhausted their administrative remedies or thirty days have lapsed from the receipt of a compassionate release request by the warden.  *United States v. Scparta*, No. 18-cr-578 (AJN), 2020 WL 1910481, at *4 (S.D.N.Y. Apr. 20, 2020).  "Chief among the[] changes [made by the First Step Act] was the removal of the BOP as the sole arbiter of compassionate release motions."  *Brooker*, 976 F.3d at 233.  Once a defendant satisfies the statute's exhaustion requirement, the First Step Act grants district courts "broad" discretion to consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release."  *Id.* at 237.  The Government does not contest exhaustion here, and Mr. Tucker waited more than thirty days from his second administrative request to seek relief from this Court.

To grant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i), the Court must consider the factors set forth in 18 U.S.C. § 3553(a) and find that "extraordinary and compelling reasons warrant" a reduction in sentence and that a reduction in sentence would be consistent with any applicable policy statements issued by the Sentencing Commission.  The Court finds that these requirements are met.

The Court first considers whether "extraordinary and compelling reasons warrant such a reduction [in sentence] . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  *Id.* § 3582(c)(1)(A).  Since the Second

3

Circuit's decision in *Brooker*, courts are no longer bound by the policy statement in U.S.S.G. § 1B1.13 in deciding a defendant's motion under 18 U.S.C. § 3582(c)(1)(A). *See Brooker*, 976 F.3d at 235–36. The Court therefore looks to § 1B1.13 for guidance in the exercise of its discretion, but is free to consider other factors that might make a defendant's circumstances extraordinary and compelling.

This Court has repeatedly found that the COVID-19 pandemic presents an extraordinary and unprecedented threat to incarcerated individuals. *See, e.g.*, *United States v. Gross*, 452 F. Supp. 3d 26, 30 (S.D.N.Y. 2020); *United States v. Williams-Bethea*, 464 F. Supp. 3d 562, 568 (S.D.N.Y. 2020); *see also United States v. Nkanga*, 450 F. Supp. 3d 491, 492 (S.D.N.Y. 2020). And that threat may present extraordinary circumstances even for those who have already recovered from or been vaccinated against COVID-19 and thus face a lower risk of infection. *See United States v. Anthony Rodriguez*, No. 16-cr-07 (AJN), 2020 WL 7640539, at *4 (S.D.N.Y. Dec. 23, 2020); *see, e.g.*, *United States v. Barajas*, No. 18-cr-736 (NSR), 2020 WL 3976991, at *10–11 (S.D.N.Y. July 13, 2020); *Graham*, 2020 WL 5604050, at *3.

Mr. Tucker is particularly vulnerable to the risks of COVID-19 and has already borne an outsized burden imposed the pandemic. He entered FCI Allenwood in "good physical health" without any notable medical conditions. PSR ¶ 76. But Mr. Tucker's health has since deteriorated. His medical record lists diagnoses of heart disease, hypertension, high cholesterol, and obesity. Tucker Br., Ex. J. Each of these conditions is recognized by the Centers for Disease Control as heightening the risk of becoming severely ill from COVID-19. *People with Certain Medical Conditions*, CDC (May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. What sets Mr. Tucker apart

4

from the vast majority of inmates in the Bureau of Prison's custody, however, is his diagnosed sickle cell disease, which is associated with markedly higher rates of hospitalization and death from COVID-19. Julie A. Panepinto et al., *Coronavirus Disease among Persons with Sickle Cell Disease, United States, March 20–May 21, 2020*, 26 Emerging Infectious Diseases 2473, 2475 (2020). *But see United States v. Clarke*, No. 16-CR-781 (RJS), 2021 WL 1948492, at *2 (S.D.N.Y. May 14, 2021) (concluding that having only the sickle cell "trait," rather than the developed disease, does not pose a sufficiently compelling reason).

Mr. Tucker tested positive for COVID-19 in January 2021, and has since recovered. Tucker Br., Ex. I. He has also recently received a second dose of the Moderna vaccine. He would have completed the regiment sooner had he not initially refused it. Government Br. at 3–4, Dkt. No. 219. The Court has made clear that refusal to receive a vaccine for COVID-19 only undermines a defendant's request for compassionate release. *See, e.g.*, *United States v. Rosario*, No. 10 CR. 197-04 (CM), 2021 WL 3188313, at *3 (S.D.N.Y. July 28, 2021); *United States v. McIntosh*, No. 12 CR. 72 (ER), 2021 WL 1660682, at *4 (S.D.N.Y. Apr. 28, 2021); *United States v. Colon*, No. 6:18-CR-06040 EAW, 2021 WL 1246187, at *3 (W.D.N.Y. Apr. 5, 2021). But here, even as Mr. Tucker receives a second dose, the risk of re-infection and of more serious complications is significant, especially given his underlying conditions and the development of variant strains of the virus. *See United States v. Perez*, No. 17-CR-512 (KMW), 2021 WL 2530272, at *2 (S.D.N.Y. June 20, 2021).

The Court finds that these circumstances are extraordinary and compelling. It emphasizes, however, that extremely few incarcerated defendants that have been vaccinated against COVID-19 or that have already recovered from an infection will have an extraordinary or

compelling reason for a modification of their sentence.  Even among those defendants, the balance of the § 3553(a) factors may not support a reduction in sentence even with the extraordinary circumstances of the pandemic.  Yet the combination of Mr. Tucker's medical conditions presents an unusually compelling circumstance.  The Court thus finds that this requirement for a reduction in sentence is satisfied and so turns next to the § 3553(a) factors.

Because this Court sentenced Mr. Tucker, it is intimately familiar with how the § 3553(a) factors apply to his case.  Mr. Tucker agreed, with other individuals, to steal and then sell a kilogram of heroin and three kilograms of cocaine.  He intended to wield a firearm to attempt that task.  As this Court stated at Mr. Tucker's sentencing, this was a "very serious crime" that required a "very serious sentence."  Sentencing Tr. at 31, 34.  Nor was it Mr. Tucker's first offense.  His criminal history dates back nearly thirty years and includes several prior occasions in which Mr. Tucker inflicted, or attempted to inflict, serious bodily injury on his victims.  PSR ¶¶ 48–52.  Consequently, Mr. Tucker qualified as a "career offender" at his sentencing.  *Id.* ¶¶ 53–55 (quoting U.S.S.G. § 4B1.1(b)).  This "violent criminal history cuts against compassionate release."  *United States v. Nieves*, No. 12-CR-931 (AJN), 2020 WL 2476185, at *2 (S.D.N.Y. May 13, 2020) (cleaned up).

But events since Mr. Tucker's sentencing weigh in favor of a lower sentence.  Mr. Tucker has had a spotless disciplinary record while incarcerated.  Tucker Br., Ex. E.  Taking account of the good-time credits that he has accumulated, he has served two-thirds of his sentence.  Tucker Br. at 12.  And Mr. Tucker has used his time in custody productively.  He has taken a variety of educational courses while incarcerated, including completing his GED.  Tucker Br., Ex. F.  He also works, Tucker Br., Ex. D, and he plans to use his experience in FCI Allenwood's kitchen to

accept an offer employment as a cook once released, Tucker Br., Ex. C.  Mr. Tucker has also submitted ample evidence from his family members that reassures this Court he will be afforded a supportive and structured environment if released.  *See* Tucker Br., Ex. B; Letter, Dkt. No. 217.

The Court also cannot overlook that the time Mr. Tucker has served in prison has been much more onerous than the Court contemplated when it sentenced him.  Accounting for the pandemic's impact on Mr. Tucker conditions of confinement, "the sentence [he] is now serving looks materially different from the sentence the Court envisioned."  *United States v. Garcia*, 505 F. Supp. 3d 328, 332 (S.D.N.Y. 2020).

One of the most important factors in favor of modifying Mr. Tucker's sentence is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  This Court previously granted compassionate release to two of Mr. Tucker's codefendants who pleaded guilty to the same statutory offenses.  *United States v. Camper*, No. 13-CR-378 (AJN), 2020 WL 7647457, at *3 (S.D.N.Y. Sept. 2, 2020); *United States v. Thompson*, No. 13-CR-378 (AJN), Dkt. No. 201 (S.D.N.Y. Mar. 22, 2021).  Moreover, this Court found those two other codefendants to be more culpable for the offense than Mr. Tucker, leading it to impose within-guidelines sentences on both codefendants and a below-guidelines sentence on Mr. Tucker.  Few, if any, defendants can identify similar facts in requesting a sentence reduction.  Even after accounting for Mr. Tucker's more extensive criminal history, the Court finds that the size of the present disparity between these sentences is unwarranted.

The sentence the Court imposed was, at the time, sufficient but no greater than necessary to achieve the purposes of sentencing.  But that analysis has changed because the realities of

incarceration have changed.  Although the Court does not believe immediate release would be consistent with the seriousness of Mr. Tucker's offense, it concludes that a modest reduction in Mr. Tucker's sentence is appropriate.  *See, e.g.*, *United States v. Henareh*, No. 11-cr-93 (JSR), 2021 WL 119016, at *5 (S.D.N.Y. Jan. 13, 2021).  After considering the § 3553(a) factors, the Court finds that a total sentence of 164 months' imprisonment—that is, a one-year reduction in the Court's original sentence—is sufficient but no greater than necessary to achieve the purposes of sentencing.  The Court will thus exercise its discretion to reduce Mr. Tucker's sentence accordingly.

## III.   Conclusion

For the foregoing reasons, the Court GRANTS in part Mr. Tucker's motion for a reduction in sentence.  The Court resentences Mr. Tucker to 164 months' imprisonment.  All other aspects of the Court's judgment remain in full force and effect.

SO ORDERED.

Dated: August 23, 2021
        New York, New York              _____
                                                    ALISON J. NATHAN
                                              United States District Judge

8